**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

SUNDAY FRANCIS OJUKWU,

     Petitioner,

v.                                 No. 1:26-cv-00229-MLG-KRS

TODD BLANCHE,
Acting Attorney General of the United States; et al.,

     Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING PETITIONER'S IMMEDIATE RELEASE**

Petitioner Sunday Francis Ojukwu is a Nigerian citizen who entered the United States without inspection in April 2023. Doc. 1 at 3-4 ¶¶ 9, 14. Since then, he has established a home within a tight-knit, faith-based community in Minneapolis, Minnesota. *Id.* at 4 ¶¶ 15-17. He and his wife have pending asylum applications before the immigration court. *Id.* at 3-4 ¶¶ 9, 15-16; *see also* Doc. 18 at 2.

On January 6, 2026, ICE arrested Ojukwu during its Operation Metro Surge in Minnesota. Doc. 1 at 4-5 ¶ 19. He was immediately taken into federal immigration custody and transferred to Cibola County Detention Center in New Mexico. *Id.* at 1, 4 ¶¶ 2, 18. He now files this Verified Petition for Writ of Habeas Corpus, Doc. 1, challenging the lawfulness of his detention. *Id.* at 1 ¶ 1. He claims his detention violates the Fifth Amendment's Due Process Clause, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"). *Id.* at 10-13. And "[w]hen a habeas petitioner's detention is without legal basis," he argues, "the typical remedy is release." *Id.* at 14 ¶ 57 (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)).

The dispositive question presented by the Petition is whether Ojukwu's detention, as a noncitizen[1] who is already residing in the United States, is discretionary pursuant to 8 U.S.C. § 1226(a) or mandatory as provided for by § 1225(b)(2)(A).[2] The applicable statutory scheme dictates whether Ojukwu was entitled to an individualized bond hearing following his arrest by federal immigration authorities.

The Court has been presented with this same issue—as applied to similarly situated defendants—time and time again. And, as in those cases, the Court hereby finds § 1226(a) applies. *See Cortez-Gonzales v. Noem*, 811 F. Supp. 3d 1287, 1295-98 (D.N.M. 2025); *Diaz-Cruz v. Dedos*, No. 1:25-cv-01117, 2025 WL 3628517, at *2 (D.N.M. Dec. 12, 2025); *Gonzales Ramos v. Dedos*, No. 1:25-cv-00975, 2025 WL 3653928, at *2-5 (D.N.M. Dec. 17, 2025). That finding is consistent with the "vast majority" of federal courts. *See Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025) (collecting cases concluding that "§ 1225(b)(2)(A) applies only to noncitizens who are actively, i.e., affirmatively, 'seeking admission' to the United States" and not to noncitizens who have been residing in the United States for several years (emphasis omitted)); *Barco Mercado v. Francis*, 811 F. Supp. 3d 487, 494 & n.22 (S.D.N.Y. Nov. 26, 2025) (noting the interpretation that § 1225 requires mandatory detention of all noncitizens living in the United States was rejected

---

[1] This [order] uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020); *see generally* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States.").

[2] *Compare* § 1226(a)(2) ("On a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States . . . and pending such decision, the Attorney General . . . *may* release the [noncitizen] on . . . bond of at least $1,500 . . . ." (emphasis added)), *with* § 1225(b)(2)(A) ("[I]n the case of a[] [noncitizen] who is an applicant for admission, if the examining immigration officer determines that a[] [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall* be detained for a proceeding under section 1229a . . . ." (emphasis added)).

in 350 cases "decided by over 160 different judges sitting in about fifty different courts spread across the United States" and collecting cases in an Appendix A).

Federal Respondents concede the Court's previous rulings control the outcome of this case because "the facts are not materially distinguishable for the purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *See* Doc. 14 at 2. Federal Respondents also cite the United States Court of Appeals for the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), for the proposition that § 1225(b)(2)(A) controls. Doc. 14 at 2. *Buenrostro-Mendez* is not binding authority on this Court. Moreover, the majority of circuit courts have concluded § 1226(a) applies to the pre-removal detention of noncitizens like Ojukwu rather than § 1225(b)(2)(A). *See Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir.); *contra Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Therefore, the Court's determination accords with the majority of the circuit courts that have opined on the matter.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993); *see also Zadvydas*, 533 U.S. at 693. Given that § 1226(a) is controlling, Ojukwu is entitled—as a right— to the due process provided to him under that statute: an individualized bond hearing. *See Cortez-*

*Gonzalez*, 811 F. Supp. 3d at 1298; *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025). Ojukwu's continued detention without such review constitutes an ongoing violation of his right to due process.[3] *See Cortez-Gonzalez*, 811 F. Supp. 3d at 1298.

Federal courts are authorized to "dispose of [a habeas petition] as law and justice require" and thus possess broad discretion to fashion appropriate relief. *Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (internal quotation marks omitted) (citing 28 U.S.C. § 2243); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ [of habeas corpus] is to secure release from illegal custody"); *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992) (noting that a federal court "possesses power to grant *any form of relief necessary* to satisfy the requirement of justice" (internal quotation marks omitted) (quoting *Levy v. Dillon*, 415 F.2d 1263, 1265 (10th Cir. 1969)). Ojukwu has been deprived of liberty since January 2026 due to Respondents' violation of § 1226(a). Doc. 1 at 4 ¶ 18. The Court "acknowledges that release— whether immediate or otherwise on a bond hearing—may 'be a distinction without a difference.'" *Aguilar-Rodriguez v. Ladwig*, No. 2:26-cv-02168-TLP-tmp, 2026 WL 1266251, at *8 (W.D. Tenn. May 8, 2026) (citation modified) (quoting *Hernandez v. Ladwig*, No. 2:26-cv-02081-SHL-atc, 2026 WL 324020, at *9 (W.D. Tenn. Feb. 6, 2026)). "After all, the Government may at any time detain an illegally present noncitizen under § 1226(a), subject to a bond hearing, and thus it is not necessary for this Court to order one." *Hernandez*, 2026 WL 324020, at *9; *see also* § 1226(a). Given the ongoing violation of Ojukwu's due process rights, the remedy that justice requires in

---

[3] Ojukwu also argues that his detention is unlawful because Respondents did not issue a warrant for his arrest. *See* Doc. 1 at 15 ¶ 59. Some courts have suggested that a warrantless arrest may provide an independent basis for release. *See, e.g., Diallo v. Baltazar*, No. 1:25-cv-3548-SKC, 2026 WL 237296, at *2 (D. Colo. Jan. 29, 2026); *Kunner v. Grant*, No. 26-cv-229-R, 2026 WL 1452463, at *2 (W.D. Okla. 2026). The Court declines to address this issue today. Regardless of the process used for his initial arrest, Ojukwu's ongoing detention is unlawful under the INA and the Fifth Amendment Due Process Clause. *Cf.* Doc. 1 at 12.

this matter is immediate release. *See Hernandez,* 2026 WL 324020, at *9. Immediate release will address the lack of due process afforded to Ojukwu and restore him to the status quo prior to the violation of his Fifth Amendment rights. *See id.* at *8; *see also Sosa v. De Anda-Ybarra*, No. 1:26-cv-01167-SMD-GJF, 2026 WL 1453999, at *3 (D.N.M. May 22, 2026) (ordering a petitioner's immediate release rather than remanding for a bond hearing).

Accordingly, the Court grants Ojukwu's Verified Petition for Writ of Habeas Corpus, Doc. 1. Respondents shall release Ojukwu—and notify his counsel of such release—immediately. He shall be transported back to Minnesota and released with all identification documentation that he possessed on his person when detained by Respondents in January 2026 along with this Order.

If Respondents re-detain Ojukwu, they must provide him with a bond hearing before a neutral Immigration Judge pursuant to § 1226(a). Respondents are enjoined from pursuing Ojukwu's detention under 8 U.S.C. § 1225(b)(2)(A).

Respondents shall file a status report within three (3) days of this Order to certify compliance. The status report shall provide the date and location in which Ojukwu was released from custody.[4]

Now that Ojukwu's Petition has been adjudicated on the merits, the Court hereby denies his Motion to Expedite, Doc. 18, and his Emergency Motion for Temporary Restraining Order and Expedited Habeas Relief, Doc. 19, as moot.

It is so ordered.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA

---

[4] The Court will enter a final judgment upon receipt of the status report.